The NINETIETH MINNESOTA STATE SENATE, et al., Respondents,

v.

Mark B. DAYTON, in his official capacity as Governor of the State of Minnesota, et al., Appellants.

A17-1142

Supreme Court of Minnesota.

Dated: September 8, 2017

### ORDER

On May 25, 2017, the Ninetieth Minnesota State Senate and the Ninetieth Minnesota State House of Representatives each adjourned *sine die*, thus ending the special session that began on May 23, 2017. On May 30, 2017, the Governor vetoed the line-item appropriation for the Legislature's biennial budget. This case presents the issue of whether the Governor has the constitutional power to line-item veto the Legislature's appropriations for itself.

The Governor's line-item veto authority is conferred by Article IV, section 23 of the Minnesota Constitution, which allows the executive to veto "one or more" of "several items of appropriation of money." Minn. Const.art. IV, § 23. As the district court found, the Governor vetoed items of appropriated funds that were dedicated to a specific purpose. *See Johnson v. Carlson*, 507 N.W.2d 232, 235 (Minn. 1993). Based on the plain language of Article IV, section 23 of the Minnesota Constitution, we hold that the Governor's exercise of his

line-item veto power over the appropriation for the Legislature's biennial budget was constitutional under that provision.

This conclusion does not, however, end the matter. Our Constitution requires "three distinct departments: legislative, executive and judicial." Minn. Const. art. III, § 1. The particular circumstances here, where the Legislature adjourned before its appropriation became law, the Governor vetoed the Legislature's appropriation, and the two Branches have remained at an impasse since then, raise doubts about the continuing functioning of the Legislative Branch.

The other Branches should resolve these doubts through the political process. Thus far, they have not done so. As a result, Minnesotans may soon be deprived of their constitutional right to three independent branches of government, *see* Minn. Const. art. III, each functioning at a level sufficient to allow the exercise of the constitutional powers committed to each branch for the "security, benefit and protection of the people, in whom all political power is inherent." Minn. Const. art I, § 1. Constitutional powers may not be used "to accomplish an unconstitutional result." *Starkweather v. Blair*, 71 N.W.2d 869, 876 (Minn. 1955).

Perhaps recognizing the combined impact of their separate decisions on the people they serve, the Legislature and the Governor entered into a Stipulation, agreeing that the Commissioner of Management and Budget could take "all steps necessary to provide continuing funding to the [Legislature]" during the appeal or until October 1, 2017, based on its "fiscal year 2017 base general fund funding." *The Ninetieth Minn. State Senate, et al. v. Mark B. Dayton, et al.*, No. 62-CV-17-3601, Stipulation at 2 (filed June 23, 2017). The district court approved this stipulation, despite acknowledging that a "literal reading of Article XI of the Minnesota Constitution prohibits the relief requested by the parties," but deciding that the "rigidity of Article XI" must yield to the constitutional rights of Minnesota's citizens. *The Ninetieth Minn. State Senate, et al. v. Mark B. Dayton, et al.*, No. 62-CV-17-3601, Findings of Fact, Conclusions of Law and Order Granting Temporary Injunctive Relief, at 8 (Ramsey Cty. Dist. Ct. filed June 26, 2017). Again on July 31, 2017, the parties stipulated to a funding proposal, and the district court ordered the Commissioner of Management and Budget to continue to provide funding to the Legislature during this appeal allowing the Legislature to "petition the court for funding" for "extraordinary and unanticipated expenses" that might be incurred during the appeal. *The Ninetieth Minn. State Senate, et al. v. Mark B. Dayton, et al.*, No. 62-CV-17-3601, Stipulation and Order at 2 (Ramsey Cty. Dist. Ct. filed July 31, 2017).

We agree with the district court that it is the people of Minnesota whose interests are at stake, but we do not see in the language of Article XI authority for a judicial funding remedy simply because those interests are at risk. Article XI provides: "No money shall be paid out of the treasury of this state except in pursuance of an appropriation by law." Minn. Const. art XI, § 1. We are unaware of any authority that allows the Judicial Branch to authorize spending simply because parties ask a court to do so. *See, e.g., State ex rel. Gardner v. Holm*, 62 N.W.2d 52, 60 (Minn. 1954). In fact our cases suggest that the Judicial Branch does not have the inherent power to appropriate money. *See, e.g., County of Beltrami v. Marshall*, 135 N.W.2d 749, 754 (Minn. 1965); *State v. Dahlgren*, 107 N.W.2d 299, 303 (Minn. 1961). Particularly in the area of appropriations, over which both the Legislature and the Governor hold constitutional pow-

ers, the Judicial Branch must proceed cautiously and with respect for the plain language of the constitution. *See Clerk of Ct. for Lyon Cty. v. Lyon Cty. Comm'rs,* 241 N.W.2d 781, 786-87 (Minn. 1976). Further, a proper respect for our co-equal branches of government counsels that we intervene in their dispute only when absolutely necessary.

Apart from the judicial funding remedy used here, the exhibits in the record and the parties' positions at oral argument suggest that carryover funds from previous appropriations are available. But the extent of the funding available to the Legislature without the parties' stipulations and the district court's June 26 and July 31 funding orders is unclear, as is the date by which that funding will be exhausted given actual expenditures after the start of this fiscal year and anticipated expenses before the next regular legislative session convenes.

Finally, on September 6, 2017, a motion to intervene in this appeal was filed by the Association for Government Accountability. The Association seeks to intervene in order to challenge the judiciary's subject-matter jurisdiction over this dispute.

The issues identified above require additional input from the parties in order to assist the court in deciding this case.

Based upon all the files, records, and proceedings in this matter,

IT IS HEREBY ORDERED THAT:

1. Prior to Judicial Branch vindication of the people's constitutional right to three independent, functioning branches of government, the other Branches should have the opportunity to resolve this dispute. We therefore require the parties to participate in good-faith efforts to resolve this dispute through mediation. The parties shall notify this court by 4 p.m. on Tuesday, September 12, 2017, of the mediator they have agreed to use. If the parties are unable to agree on a mediator, we will designate one. On or before September 30, 2017, the parties shall file a joint statement with this court that reports on the status of these efforts, and if the matter is not resolved, provides a date by which the mediation will be concluded.

2. On or before September 15, 2017, the parties shall file and serve informal memoranda that address the constitutionality of the Judicial Branch ordering funding to the Legislature after June 30, 2017. The memoranda shall also specifically address all other potential judicial remedies, if any, for the vindication of the people's constitutional right to three independent, functioning, branches of government, and discuss any separation-of-powers concerns raised thereby. The parties shall also respond to the motion to intervene filed by the Association of Government Accountability, specifically to address the challenge to the judiciary's subject-matter jurisdiction over this matter. Informal memoranda shall be limited to 25 pages. No reply briefs will be permitted, and no further briefing will be permitted by the Association of Government Accountability.

3. On or before September 15, 2017, the parties shall file a joint statement that provides: (a) updated calculations on the amount of carryover funds available to the Minnesota House of Representatives and the amount of carryover funds available to the Minnesota State Senate as of July 1, 2017 and as of September 1, 2017; and, (b) the date by which carryover funds will be exhausted by the House and by the Senate, based on updated information on the actual monthly expenses of the House and Senate from July 1, 2017 through September 1, 2017, and the anticipated expenses of the House and Senate from September 1, 2017 through January 31, 2018.

BY THE COURT:

/s/ _____

Lorie S. Gildea
Chief Justice

STRAS, J., took no part in the consideration or decision of this case.